## A. W. Joiner v. The State.

### No. 2734.   Decided April 20, 1904.

**1.—Indictment—Forgery—Innuendo.**

In an indictment for the forgery of a voucher against a telegraph and telephone company by its cashier for wages and salaries, set out in haec verba, the terms "wages and salaries, pay roll December 486/90," occurring therein should have been explained by innuendo or explanatory averments and not left to inference.

**2.—Same—Variance.**

In an indictment for forgery of a voucher, set out in haec verba, against a telegraph and telephone company by its cashier, in which it is shown that his name also appears as auditor on said voucher, the variance should be explained by proper averment.

**3.—Same—Voucher Set Out Should Be Explained.**

An indictment alleging the forgery of a voucher against a corporation by its cashier, by simply setting out the voucher in haec verba, should by proper innuendo allege the official capacity of its president, auditor and cashier and not leave this matter to inference.

**4.—Variance Between Allegata and Probata.**

The name of the local manager of a corporation against whom a voucher was alleged to have been forged appeared on said voucher as set out in haec verba in the indictment, but it was not alleged that he was in fact such manager, which the evidence showed him to be; neither does the receipt set out in the indictment fix its date or allege the signature, which under the evidence it was necessary to show and which should have been explained by proper averments.

**5.—Evidence—Other Offenses.**

Where there was no question as to the signature of an alleged forged voucher by defendant, it was error to permit the State to introduce other similar blank vouchers found on his person for the purpose of connecting defendant with the forgery for which he was being tried.

**6.—Same—Payment of Voucher Immaterial.**

It was wholly immaterial, to show the payment of a forged voucher, to prove that it had been forged or passed, or to account for its loss, as the cashing of the instrument could not shed light on either question.

Appeal from the District Court of Llano. Tried below before Hon. Clarence Martin.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Flack & Dalrymple,* for appellant.—The court erred in permitting the State to prove by the witness W. H. Campbell that the alleged forged instrument, as set out in the indictment, was a voucher representing the wages and salaries of the employes of the Texas Telegraph and Telephone Company for the month of December, 1903.

Evidence that a written instrument represents a legal obligation is not admissible unless the indictment contains the necessary extrinsic averments showing how it represents, or imports, a legal obligation. The indictment must contain such extrinsic averments in order that a basis may be formed for the introduction of such evidence. Black v. State, 61 S. W. Rep., 478; Cagle v. State, 39 Texas Crim. Rep., 109; Robinson v. State, 43 S. W. Rep., 526, and the authorities cited in the above cases.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of forgery, and his punishment assessed at two years confinement in the penitentiary. Omitting formal portions, the indictment charges that appellant, "did then and there unlawfully, without lawful authority and with intent to injure and defraud, did willfully and fraudulently make a certain false instrument in writing purporting to be the act of another, to wit, purporting to be the act of W. H. Campbell, and purporting to be the act of C. C. Gibbs, president and general manager of the Texas Telegraph and Telephone Company, a corporation, organized under and by virtue of the State of Texas, which false instrument was signed also by the said A. W. Joiner, and is to the tenor, as follows:

Form 21

The Texas Telegraph and Telephone Company

To A. W. Joiner, Cashier          Dr.

Address       Llano, Texas

Voucher No 598

| | | | | |
|---|---|---|---|---|
| Dec. | 14 | For Wages and Salaries Pay roll for December | 486 | 90 |
| | | This voucher, when properly signed, will be paid by W. P. Ferguson, Treasurer, Hearne, Texas. | | |

| I certify the above to be correct, W. H. Campbell. | Examined and audited, $486.90 A. W. Joiner, Auditor. | Approved for payment. C. C. Gibbs, Pres. & Gen'l Mg'r. |
|---|---|---|

Received............................190......, from The Texas Telegraph & Telephone Co. ....................................................................Dollars, in full of the above claim.

$................................

READ THIS.—The above receipt must be dated and signed by the party in whose favor this voucher is made out, or when signed by another party, the authority for so doing must in all cases accompany it."

The second count charges appellant with passing the same instrument.

The indictment is attacked in motion in arrest of judgment, in that it does not charge that the instrument would have created, increased, diminished, discharged or defeated any pecuniary obligation, or would have in any manner transferred or have affected any property; and that it does not import a legal liability or obligation, nor any extrinsic averments which would show that such instrument imports a legal liability or obligation; and that it is uncertain and indefinite, in that it charges "for wages and salaries pay roll for December 486—90;" and that this statement could not be understood without innuendo or explanatory averments; and that the indictment does not contain either explanatory or innuendo averments; that the instrument does not show nor attempt to show whether it was the act of the telegraph and telephone company, by and through its president and general manager, Gibbs, or whether in fact Gibbs was the manager and president, or whether it is the act of Gibbs, as president, or an individual; and that there are no allegations or averments in any way connecting Campbell with said company as to whether he was an officer connected with the company or an individual disconnected with the company. And that there is also a variance between the purport and tenor clauses in regard to the signature of A. W. Joiner; that the purport clause charges him with forging said instrument, and the tenor shows that it was signed by him as auditor. It is also claimed that there is a variance between the allegation and proof; that the instrument set out in the indictment does not show the receipt at the bottom of the alleged forged instrument was filled out at the time it was alleged to have been forged or passed, while the evidence introduced shows the receipt was filled out at the time of the execution of the instrument, at least at the time it was passed. We believe these grounds are well taken. The term "wages and salaries pay roll for December 486—90" should have been explained by innuendo or explanatory averments as to what is meant by this. It is a matter entirely of inference as to what this expression means. It is not stated that it was for the wages and salaries of the pay roll of the Texas Telegraph and Telephone Company; nor is it shown that the figures 486—90 mean $486.90. An inspection of the instrument shows it was made out in favor of A. W. Joiner, cashier, and where appellant signs, it shows to have been examined and audited for $486.90, and signed by A. W. Joiner, auditor. The purport clause of the instrument alleges and charges Joiner as an individual and not in his official capacity, if in fact he so acted. The indictment leaves it in this uncertain condition. The purport clause alleges that the act purports to be the act of C. C. Gibbs, president and general manager of the Texas Telegraph and Telephone Company, but does not allege that C. C. Gibbs was in fact such officer; and there is no averment anywhere coupling Campbell with the company. Campbell, under the evidence, was the local manager of this company at the town of Llano. The evidence further shows that defendant was the

cashier of the company. The instrument set out does not fix any date or signature to the receipt. The evidence shows that at the time of its presentation at the bank, which under the evidence was about twenty minutes after its alleged execution by appellant, it was signed. Under the decisions these matters should have been explained by proper averments. Cagle v. State, 39 Texas Crim. Rep., 109; Black v. State, 42 Texas Crim. Rep., 585; Lynch v. State, 41 Texas Crim. Rep., 209; Daud v. State, 34 Texas Crim. Rep., 460.

There are several bills of exception reserved to testimony introduced through witnesses explaining the voucher or instrument declared upon. Under the foregoing views this testimony should have been excluded under the indictment as presented. It is not necessary to go into a detailed review of the bills of exception along this line.

The State introduced in evidence two blank vouchers of the Texas Telegraph and Telephone Company with the name of C. C. Gibbs signed to it, and stamped with a rubber stamp across the face, as follows: "This voucher, when properly signed, will be paid by W. P. Ferguson, treasurer, Hearne, Texas." The name of C. C. Gibbs appeared just beneath the words, "Approved for payment," and just above the words, "Pres. & Gen'l Mg'r." And also introduced at the same time a blank voucher just as the two above mentioned, except that it did not have the name of C. C. Gibbs signed to it. These were introduced in connection with the testimony of the sheriff of Llano County, who stated that he received defendant from a United States marshal, after his arrest for the offense herein charged; and when he received defendant as aforesaid he found these blank vouchers on his person and secured them from defendant. Subsequently Gibbs was introduced, and permitted to testify that his name appearing on the above described blank vouchers was not his signature but was a forgery. Various objections were urged to this testimony. We are of opinion the exceptions were well taken. There are cases in which possession of forged instruments or those partially forged may be introduced in evidence to show the intent or connect the accused with the crime for which he is being prosecuted; but the rule does not obtain under the evidence in this case. There was no question raised as to the signature of appellant to this instrument; his confession was introduced and various acts and circumstances showing he was the author of the instrument set up.

Campbell and Moore were permitted to testify, that some time after the alleged forgery the witness Campbell, as superintendent of the Texas Telegraph and Telephone Company, paid off the voucher set out in the indictment, to the Llano County Bank; and that the amount paid was $486.90 and protest fees. Various objections were urged to this testimony. Whether Campbell or the Llano County Bank paid this instrument is immaterial. The forgery and passing of the forged instrument were completed acts under the testimony long prior to the payment of this money, and the fact that the money may have been

subsequently paid shed no light upon the execution or passing of the instrument. Nor was it necessary to prove the subsequent payment of the voucher to account for its nonproduction. If the voucher had been mislaid or lost, this could have been shown without testifying that it had been cashed. The cashing of the instrument would not in any way tend to show its loss. If the voucher passed into the hands of Campbell or Moore, and could not be produced at the trial, its loss could have been accounted for in a proper way. The fact that they paid the vouched did not tend to show its loss.

There were some questions raised in reference to the charge of the court and the refusal of special instructions. On a trial under proper indictment these questions may not arise. We have seen proper to discuss some of the errors in the bills of exception in regard to the admission of testimony with reference to another trial, if another indictment should be found. The judgment is reversed and prosecution ordered dismissed.

*Reversed and dismissed.*