## W. M. CHOWNING V. THE STATE.

No. 20055. Delivered December 21, 1938.
Rehearing Denied May 3, 1939.

The opinion states the case.

*J. C. Darroch* and *E. M. Davis,* both of Brownwood, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is knowingly passing a forged instrument. The punishment assessed is confinement in the state penitentiary for a term of two years.

Appellant's only contention is that the court erred in declining to sustain his motion to quash the indictment, on the ground that it failed to charge an offense, etc.

The indictment contains two counts. The first charged forgery and the second, being the one upon which he was convicted, omitting the formal parts reads as follows:

"* * * That on or about the 24th. day of December, A. D., 1936 and anterior to the presentment of this Indictment in the County of Runnels and State of Texas, W. M. Chowning did knowingly and fraudulently pass as true to Stanley Gray a forged instrument in writing to the tenor following:

"BANNER CREAMERIES,     Payroll Account     No._____
                        "Abilene, Texas, 12/24-1936
    "Pay to the order of C. B. Rutherford               $34.00
    Thirty  four  _____Dollars
                            "Banner Creameries Payroll Account
                            By C. O. Williams
    "To the
    "Farmers and Merchants National Bank
    "88-112
    "Abilene, Texas
    "The payee by endorsement of this check acknowledges payment as below. Void if altered. If not correct return.
    "Truck 5447"
    "Which said instrument in writing the said W. M. Chowning then and there knew to be forged and did then and there so pass the same as true with the intent to injure and defraud * * *."

He first takes the position that it is not charged in the indictment that the name signed to the alleged forged instrument was other than his, appellant's name. The name signed thereto was other than his. It is charged that W. M. Chowning, (which is appellant's name), did knowingly pass as true, a forged instrument which is set out in haec verba and which bears the name of Banner Creameries by C. O. Williams and which is drawn on the Farmers and Merchants National Bank of Abilene, Texas. This instrument is an ordinary draft such as is commonly used in commercial transactions and required no explanatory averments. See Dooley v. State, 21 Tex. Crim. Rep., 549; Miller v. State, 50 Tex. Crim. Rep., 536.

His next contention is that the instrument is not such as, on its face, created a pecuniary obligation so that without any explanatory averments, it was insufficient to charge the offense. His contention seems to us untenable. The instrument was an ordinary commercial draft which, if true, would create a pecuniary obligation on the Banner Creameries and would be sufficient as a basis for a civil action. Consequently it would be good as the basis of a forgery. In the case of Dooley v. State, supra, this court, speaking through Judge Willson, said: "Our statute defines the term 'pecuniary obligation,' used in the definition of forgery. It 'means every instrument having money for its object and every obligation for the breach of which a civil action for damages may be lawfully brought.' "

It is clear to our minds that money was the object of the instrument in question. It was, in legal effect, an order by

Banner Creameries upon the Farmers and Merchants National Bank of Abilene in favor of C. B. Rutherford for $34 in money. Its object was to have the bank pay to C. B. Rutherford the amount of money therein specified and if the bank had paid the money, the Banner Creameries would have been liable to the bank had the draft been genuine. In support of the views herein expressed, we refer to the cases of Gumpert v. State, 228 S. W., 237; Davis v. State, 156 S. W., 1171; Morris v. State, 17 Texas Crim. Rep., 660.

Appellant also contends that the instrument, on its face, fails to disclose that C. O. Williams, whose name appears signed thereto, had authority to act on behalf of the Banner Creameries. That therefore, explanatory averments were necessary in order to show that it created a pecuniary obligation.

The test is not whether in fact C. O. Williams had such authority; it is sufficient if, on its face it appears so, and the instrument imports a pecuniary obligation and appears to be genuine. If so, it is the basis for a charge of forgery. If, however, the instrument be genuine, it would not be a forgery and consequently would not support a charge of passing a forged instrument, since it would not have a tendency to defraud. See Spicer v. State, 52 Texas Crim. Rep., 177; King v. State, 42 Texas Crim. Rep., 108.

The record clearly shows that the alleged instrument was a forgery and that he knew it. He had another check in his possession, similar to the one in question, which he was about to pass to another merchant when he was apprehended and turned over to the officers.

Having reached the conclusion that the indictment is sufficient to charge the offense of knowingly passing a forged instrument, the judgment of the trial court will be affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant in his motion for a rehearing insists that we erred in holding the indictment in this case sufficient to charge an offense against the law, because it does not appear from the alleged forged instrument that Williams had authority to act for and on behalf of the Banner Creameries in signing its name thereto, and that the indictment should have averred that Williams had the authority to thus bind the Banner Creameries.

Does the instrument purport to be the act of Banner Creameries without the word "by" preceding the name "C. O. Williams?" We think so. The word "by" would be implied, not as constituting an element of the offense, but in giving verity to the instrument and clothing it with the appearance of an obligation on the Banner Creameries to pay a certain sum out of its payroll account. If it had that appearance, if it conveyed that idea and was calculated to defraud, it was sufficient to predicate a charge of forgery thereon without any explanatory averments in the indictment. It need only *purport to be* the act of *another*; in this case the act of the Creameries Company.

In the case of Brown v. State, 60 Texas Crim. Rep. 505, in an opinion by Judge Ramsey, a check in substantially the same form as this one was held to be a subject of forgery without the aid of any explanatory averments. We quote the check:

"Orange, Texas, Feb. 1910. _____No.

$10.00

"The First Orange Bank
of Orange, Texas.

"Pay to Herbert Brown or bearer
ten_____/100 Dollars.

"The Cameron Live Stock Co.

"Andrew Lemaire."

Although this indictment was not attacked on the specific grounds as the one in the instant case, nevertheless the court held that such indictment properly charged a violation of the law. To the same effect is the holding in the case of Brod v. State, 42 Texas Crim. Rep. 71. To the same effect is the holding in the case of Howard v. State, 37 Texas Crim. Rep. 494, the forged instrument in that case being as follows:

"Houston, Texas, Feby. 7, 189____ No. 201.

"Planters' & Mechanics National Bank pay to P. Howard, or order ($25.00) twenty-five dollars.

"John Finnigan & Co."

in which case an indictment merely setting forth the instrument alleged to be the subject of forgery, signed John Finnigan & Co., was held sufficient to charge this offense.

We do find an authority of another state that seems to us to be in point relative to the proposition that where the name of another had been signed by an agent it was a representation therein by the one who utters or passes the instrument that the relation of principal and agent existed at that time, and thus abrogated the necessity of alleging or proving the

relationship of principal and agent. We refer to a Minnesota case,—State v. Fay, in the 83 N. W. Rep. 158. The instrument therein alleged to be forged reads as follows:

"June 19th, '99. Deer River Minn.
"P. McDonald, of Duluth, Minn., pay to Matt Fay or order sixty-five dollars and thirty-five cts., for labor at Cedar Camp.
"P. McDonnell, by John McDonnell."

The specific objection was raised to this indictment that is the point at issue in this instant cause, and the Supreme Court of Minnesota held relative thereto the following: "Therefore a representation that the instrument is genuine necessarily includes a representation that John McDonnell was authorized to execute it for P. McDonnell. Now, when the defendant uttered the instrument as true, knowing it to be forged, he thereby represented and affirmed that the agent purporting to execute it for his principal had authority so to do. He is bound by his own representations and it was not necessary to allege in the indictment or prove on the trial such agency. Were it otherwise, all that it would be necessary for a party putting off forged paper to do in order to escape conviction would be to deal in such paper only as purported on its face to be executed by an agent for his principal, but who in fact had no authority to represent the principal in any case. It follows that an indictment for uttering as true forged paper purporting on its face to have been issued by an agent in the name of his principal, which sets out the instrument in haec verba, need not aver the authority of the agent. State v. Goodrich, 67 Minn. 176, 69 N. W. 815; State v. Riebe, 27 Minn. 316, 7. N. W. 262; Cross v. People, 47 Ill. 152. The indictment in this case falls within this rule, and states a public offense."

We think that the gist of this offense is located in the signature of the Banner Creameries, and a charge on their payroll account, regardless of by whom such shows to have been made, and in the fact that this instrument purported to be the obligation of such Creameries and not the obligation of Mr. Williams, whoever he might have been, and having been set out in haec verba, according to the above authorities, it was sufficient to charge an offense against the law without further averments, and thus believing we think the motion is without merit, and it is accordingly overruled.

HAWKINS, Judge (Concurring).

I concur with my brethren in the disposition of this case by the original opinion and the opinion on rehearing. However,

I think it proper to say we have examined all the authorities cited by appellant in his brief and motion for rehearing and also those furnished in a supplemental list since the case was orally presented. Among them are the following: Millsap v. State, 43 S. W. 1015; Lynch v. State, 53 S. W. 693; Black v. State, 42 Tex. Cr. R. 585, 61 S. W. 478; Carrell v. State, 184 S. W. 190; Young v. State, 84 Tex. Cr. R. 179; 206 S. W. 197; Joiner v. State, 46 Tex. Cr. R. 408, 80 S. W. 531; Belden v. State, 99 S. W. 563; Joiner v. State, 87 S. W. 1039; Whitmire v. State, 70 Tex. Cr. R. 475, 156 S. W. 1179; Cagle v. State, 44 S. W. 1097. The indictment in each of those cases was held bad for lack of explanatory or extrinsic averments, but it will be found that in all of them the court was not dealing with an ordinary commercial instrument.

In Carrell v. State, supra, which is strongly relied upon by appellant, a check was drawn on a named bank for a specified amount, immediately following which, in brackets, were the words "(Available School Fund)", the check being signed by two parties. The instrument was treated by this court as a check drawn on the bank against the school fund, and the indictment was held bad because there was no averment that the signers had authority to draw against the school fund. It is to be observed that the check considered there was not a negotiable instrument, whereas the check in the present case was negotiable. In 6 Tex. Jur., 609, it is said: "Obligations, such as warrants issued by a municipal corporation or a county are ordinarily not negotiable. As is the rule generally with respect to the assignment of non-negotiable instruments, an assignee takes such paper subject to all defenses held by the debtor in the absence of some circumstance of estoppel which prevents the debtor from setting up such defenses." See San Patricio County v. McClane, 44 Tex. 392; Lane v. Hunt County, 35 S. W. 10; Lasater v. Lopez, 217 S. W. 373. I also quote from 6 Tex. Jur., page 604, as follows: "When payable to order or bearer a check is undoubtedly a negotiable instrument within the meaning of the Uniform Negotiable Instrument Act." See Commercial State Bank v. Harkrider-Keith-Cooke Company, 250 S. W. 1069; Metropolitan Loan Company v. Reeves, 236 S. W. 762.

In Lasater v. Lopez, supra, the Supreme Court of this State, speaking through Chief Justice Phillips, said: "County warrants, such as it has been the custom of commissioner's courts throughout different periods of the State's history to issue in payment for public improvements, whether interest bearing

or not, have not the character of negotiable instruments. This is the universal rule. It was so announced as to interest bearing warrants issued for the erection of a court house and jail, on both the first appeal of San Patricio County v. McClane, and in the later consideration of that case in 58 Texas, 243. Such instruments are not intended to have the qualities of *commercial paper,* and do not possess them. County warrants serve, in general, as but a convenient mode for conducting the authorized business of the county. It would be disastrous to counties and municipalities to accord to instruments of such nature that attribute of negotiable bills which protects an innocent holder for value from defenses of which he has no notice." (Italics mine.) See also Speer v. State, 58 S. W. (2d) 95.

It is apparent that in reaching the conclusion in the Carrell Case that explanatory averments were necessary the court had in mind that the check drawn against the available school fund was not an ordinary commercial instrument. In the course of the opinion Judge Davidson said: "Before this money (referring to the money in the available school fund) can be paid out the proper steps must be taken and approved by the county superintendent. It may be the correct rule to state that it is unnecessary that the voucher or check or means of drawing money from the county available school fund should have gone through all of the steps legally prescribed in order to make the subject of forgery. If one legal step is taken that would be calculated to deceive, and that could be used even as evidence to sustain further steps that might be necessary under the authorities this might be sufficient. But it is useless to discuss those matters. This count does not undertake anywhere to allege anything in the way of innuendo or explanatory averments which shows the check to be legal. It is not the purpose of the writer to go into a discussion of just what innuendo or explanatory averments may be called for to make a valid indictment, or even that it can be made valid by explanatory averments. The purpose of the opinion, so far as the writer is concerned, is that whatever steps may be required by statute must be followed."

It is manifest that the holding in the Carrell Case does not militate against the conclusion here reached that the indictment in the present case is sufficient in the absence of explanatory averments. There the instrument was not an ordinary commercial instrument, while here the check, if genuine, is negotiable and is an ordinary commercial instrument under the decisions heretofore referred to. This being true,

it follows that the indictment is sufficient without explanatory averments under the rule that such averments are not necessary "if the instrument in writing alleged to be forged is such on its face, as if true, that it creates or increases a pecuniary obligation, such as a check, draft, note or other ordinary commercial instrument, and will afford the basis of a civil action without resorting to extrinsic testimony." Branch's Ann. Tex. P. C., sec. 1398; Hendricks v. State, 26 Tex. Cr. App. 176, 9 S. W. 555; Reeves v. State, 51 Tex. Cr. R. 604, 103 S. W. 894; Reeseman v. State, 59 Tex. Cr. R. 430, 128 S. W. 1128; Carter v. State, 61 Tex. Cr. R. 609, 136 S. W. 47; Davis v. State, 156 S. W. 1171; Cheesebourge v. State, 157 S. W. 762. If genuine, the check would be the basis of a civil action without resorting to extrinsic testimony. I quote from 2 Tex. Jur., 639, as follows: "Under the statute (referring to paragraph 8 of Article 2010, R. S.) an answer is required to be verified if it sets up a denial of the execution by defendant himself or by his authority of any instrument in writing upon which the petition is founded. Generally, the effect of this provision is that one alleging liability upon an instrument signed by an agent need not prove the agent's authority, unless the answer denying authority—or proffering a plea of *non est factum*—is verified." Reid v. Reid, 11 Tex. 585, Godfrey v. Central State Bank, 5 S. W. (2d) 529, Missouri State Life Insurance Company v. Boles, 288 S. W. 271, Hunt v. Siemers, 53 S. W. 387, are cited in support of the text. The check was an ordinary commercial instrument, and, if genuine, would have afforded the basis of a civil action without resorting to extrinsic proof, save under the circumstances referred to in the preceding quotation.